The policy of a law that would authorize the subjecting of unearned wages to the payment of debts well might be doubted. Its enforcement would tempt even an honest man to repudiate his debts. In Phelps v. Railway Co., *supra*, p. 172, Brewer, J., says:

"We may also remark here without enlarging to any extent, that the construction claimed by the plaintiffs would tend to prevent dealings of any kind between the debtor and other parties. By serving a few garnishee notices the future earnings of a debtor might be wholly seized for the payment of his debts, leaving him nothing for personal support. In that way a laborer, however skillful and however valuable his services, might practically be driven from a community."

It is said in the argument that the court of common pleas entertained a similar view of the statute, but affirmed the order because the plaintiff in error was not prejudiced. We think he was prejudiced $31.25 worth. He was served with notice of the hearing, as provided by the act, and is, we think, bound by the order made against his debtor, and in this view he is wrongfully deprived of his money and it was in prejudice of his rights, for in law it is his money and prejudice to his legal rights by taking his money without authority of law, and is not cured by applying the money to the payment of his debt.

The judgment of the court of common pleas is reversed and the order of the justice of the peace set aside at the costs of the defendant in error.

---

## RAILWAYS—FENCES.

[Erie (6th) Circuit Court, April 24, 1902.]

Haynes and Mooney, JJ.

EDDIE LUDTKE, AN INFANT, ETC., v. L. S. & M. S. RY. CO.

1. OBLIGATION OF RAILWAYS TO FENCE TRACKS IS PEREMPTORY—SEC. 3324 REV. STAT.

The obligation of Sec. 3324 Rev. Stat., providing that railways shall fence their tracks sufficiently to turn stock and providing that any person may recover for any damage which he suffers by reason of the failure of any such company to perform its duty in that respect, is peremptory and is not limited in its application to damages or injuries arising from loss of cattle resulting thereby, but applies to the protection of the public at large and to the benefits to which the public are entitled.

**2. NOTICE OF DEFECT IN FENCE.**

A railway company is charged with notice of an opening in the fence enclosing its track when such opening has existed for more than two years and a path has been worn by persons passing to and fro through such opening and across the track at that point.

**3. EFFICACY OF FENCE, A QUESTION OF LAW AND FACT.**

The question as to whether a fence is a sufficient fence to turn stock, under Sec. 3324 Rev. Stat., is a mixed question of law and fact, and must be submitted to the jury.

**4. LIABILITY OF CHILD FOR NEGLIGENCE, A QUESTION FOR JURY.**

The question as to whether a child of six years is capable of a negligent act is for the jury.

**5. EVIDENCE OF DANGER TO CHILDREN THROUGH FAILURE TO REPAIR DEFECTS IN FENCE.**

In an action against a railway company for injuries to a child who has strayed upon its track through an opening in the fence, evidence that the injured child was in the habit of playing at the end of a street which terminated at the track at the point where such opening was, is competent as showing the notice the company had' of the situation, and the liability of the child to pass through the opening in the fence and upon the track of the railway company.

HEARD ON ERROR.

Hon. E. B. King and John F. McCrystal, for plaintiff in error.

George E. Reiter, for defendant in error.

HAYNES, J.

Suit was brought in the court of common pleas by the plaintiff to recover damages for injuries that he received by reason of being run over and injured by a train on the track of the defendant company's railroad. He sets up, among other things:

That the defendant's railroad and right of way runs nearly east and west through the city of Sandusky, Erie county, Ohio; that the line of defendant's lands, right of way and main railroad track runs by and is located in front of and near the south end of Clinton street in said city; that the defendant was by law required to construct and maintain a good and sufficient fence along the lines of its lands of its said right of way and said railroad track; that along the north line of the lands of said defendant and along the north side of said defendant's road and right of way, in front of and near the south end of Clinton street in said city, the defendant, many years ago, constructed or caused to be constructed a fence; that for one year and more prior to the sixteenth day of August, 1900, the defendant negligently permitted said fence to become and remain badly out of repair, and insufficient to such an extent that a section of said fence, the distance between two posts in front of and near the south end of Clinton street in said city, was broken down, open and unobstructed, and persons had been accustomed for one year and more prior to the date above named to pass onto and from said defendant's

right of way and railroad tracks through said fence where the same was broken down, unobstructed, and out of repair as aforesaid.

The petition further proceeds to say that the plaintiff, being under six years of age, and being accompanied by his sister, a little older than himself, and a brother, passed upon the railroad track for the purpose of playing with some children there, and remained there for some little time, crossing the railroad track, as I understand, and back again, and still remaining along the line of the track until a freight train of the defendant company started to leave the city of Sandusky and passed along upon the track of the railroad. The plaintiff then, in his childish way, ran towards the train, and either attempted to touch it or to run parallel with it, and fell, or was thrown down, and one foot fell upon the track and the foot was cut off.

The issues were joined by the railway company upon the main points as stated, and the case went to trial, and testimony was offered in support of the allegations, and at the conclusion of the plaintiff's testimony the case was arrested from the jury and the case was dismissed. No verdict was taken.

Some allegations were made in the petition in regard to the manner in which the engine was being run, but no evidence was offered in support of these allegations, and so far as appears here, the train was passing along the line of the railroad in a proper manner and at a proper rate of speed and in the usual course of business.

The real question in the case, we take it to be a question as to whether the defendant is liable in regard to the condition of the fence, for we are of the opinion that if there had been no fence required to be there there would be no liability on the part of the company to this infant if he had strayed upon the track and had been injured.

Section 3324 Rev. Stat., reads:

"A company or person having control or management of a railroad shall construct, or cause to be constructed, and maintain in good repair on each side of such road, along the line of the lands of the company owning or operating the same, a fence sufficient to turn stock; and when such fence is constructed out of barbed wire, or separate lateral strands not connected by interwoven wire, or cross perpendicular wire not more than fifteen inches apart, there shall be securely fastened to the posts, at the top of the same, at right angles thereto, at least one board, not less than one and one-eighth inches thick and five inches wide, and extending the entire length thereof; and before operating such road shall cause to be maintained at every point where any public road, street, lane or highway used by the public, crosses such railroad, safe and sufficient crossings, and on each side of such crossings cattle-guards suf-

Ludtke v. Railway Co.

ficient to prevent domestic animals from going upon such railroad; and such company or person shall be liable for all damages sustained in person or property in any manner by reason of the want or insufficiency of any such fence, crossing or cattle-guard, or any neglect or carelessness in the construction thereof, or in keeping the same in repair."

The contention here on the part of the defendant company is that the statute has no application to a case of this character; that its primary object is to prevent the straying of cattle upon the track, and that it is to be confined to that class of cases.

The statute has been in existence in Ohio a great while, but there have been no decisions by any of the courts that have been cited for us or that we have been able to find that bear directly in point upon this question, and we are left to such light as we can get from a construction of the statute and from cases in other states that are similar in their character.

Now, it will be observed, that the railway company is required to build a fence. That is obligatory. It is true it is said that the fence shall be sufficient to turn stock. That would simply go to the quality of the fence, but the obligation to build a fence is peremptory, and it is further provided that any person may recover for any damages that he may suffer in person or in property, if the company fails to perform its duty in that respect. We think the word "person" there should be observed, and that some force should be given to it.

An instructive case on this question may be found in Schmidt v. Railway Co., 23 Wis. 186 [99 Am. Dec. 158]. That was a case like this, where a child had strayed upon a railway track in consequence of the failure of the railroad company to erect a fence, and it had been injured. The case had been tried and a judgment had been rendered in favor of the plaintiff against the railway company, and the case taken to the Supreme Court of the state of Wisconsin. It appears from the statement in regard to the statute, that the statute is in substance like ours. It is said to be copied from one in the state of New York, and in Corwin v. Railway Co., 13 N. Y. 42, a copy of the statute is given. In that case the company was required to build a fence, and in regard to some of the later clauses it referred to cattle and the liability of the company in regard to injury animals might do in case a fence was not built. It was argued by counsel that the statute is applicable only to damages or injuries arising from the loss of cattle, and the court reach that and meet it and say at page 193 with regard to a case that they had already decided:

"Thus a liberal construction has already been placed upon the statute for the purpose of furthering the important and beneficial objects of

its enactment. It has been extended to cases which, if not clearly within the letter, are certainly within the spirit of the law, as when it was applied to the case of a passenger injured in consequence of a failure of the company to fence its road. And it is in strict harmony with the principle and reasoning of these cases to say that the statute also embraces a case like the one before us."

The case referred to is Blair v. Railway Co., 20 Wis. 254, where animals having strayed upon the railroad track, the company having failed to fence the track, the cars struck the animals, and I think, were derailed and passengers were injured; and that raised the same question, and the court held in that instance that a passenger was entitled to the benefit of that statute, and it was not to be limited to recovery for damages to animals alone, and they cite authorities in regard to the object and purpose for which these statutes are passed, not limited simply to the protection of animals, but to the protection of the public at large, and to the benefits to which the public are entitled. The court say in Schmidt v. Railway Co., *supra,* at page 193 :

" In Wakefield v. Conn. & Pass. Ry. Co., 37 Vt. 330, where a statute required the bell on locomotive engines to be rung, or the whistle blown, for a certain distance at crossings, the court held that this duty was imposed upon railroad companies, not only in reference to persons approaching or in the act of crossing the track, but in reference to all persons who, being lawfully at or in the vicinity of the crossing, might be subjected to accident and injury by the passing train. In that case the plaintiff had crossed the track, and driven about thirty-five rods south, when a train of freight cars came over the road from the south, and was within five or six rods from the plaintiff's team when first discovered by him and his horses. The forward pair of horses, being greatly frightened, instantly turned back with such force as to break their fastenings to the other horses, and ran back to the crossing, where they were injured by the passing cars. The court, while holding that the connection of the failure to blow the whistle or ring the bell with what did happen seemed very slight, yet could not for that reason say that the company was not responsible for any injury caused by an unwarrantable omission to perform the duty imposed by law.

" In Singleton v. Eastern Counties Ry. Co., 97 Eng. C. L. 287, it seems to be assumed by the judge, that if the children had strayed upon the railroad track through the fence, at a place where a rail was off, which fence the company was bound to keep in repair, this would be such an act of negligence as would render the company liable. Mr. Justice Williams says: 'There was nothing to show how the children got on the railway. All was mere conjecture and surmise.' But the fair

Ludtke v. Railway Co.

inference from the case is, that if it had appeared that the child passed on to the track through a defective fence which the company was bound to keep up, then the action might have been maintained."

Instructive cases upon this question will be found in Hayes v. Railway Co., 111 U. S. 228 [4 Sup. Ct. Rep. 369], which arose in the city of Chicago, and which was decided by the Supreme Court of the United States, with reference to certain fences or walls or protection that the railway company was bound to build along near the lake front and in front of grounds that had been laid out for the purposes of a path, and the language used by the court is strong, earnest and instructive. There is a case also, Stuettgen v. Railway Co., 50 N. W. Rep. 407 [80 Wis. 498], where a child was hurt upon a railroad track, and Marcott v. Railway Co., 10 N. W. Rep. 53 [47 Mich. 1, 9], and Nickolson v. Railway Co., 83 N. W. Rep. 454 [80 Minn. 508].

Now, we think the reasoning of these cases is such that it is proper to be adopted. We think when a railroad company is required to build a fence along the line of its track, it is to build it for the benefit of all persons who might be in that vicinity; that is to say, as to all persons who might unwittingly or unadvisedly stray upon the track and be injured by passing trains.

The company in this case had built a fence. The fence is described in the pleadings, and it is also shown that the fence at this particular point where this street terminated at the railroad track had been open for a period of two years at least, or, at least, we will say for a long time. Persons had worn quite a track in passing to and fro, and by whom it was opened, or wherefore is not shown, and it is immaterial, perhaps. It does, we think, sufficiently appear that the fence had been in that condition a sufficiently long time to attract the attention of persons in charge of the railroad; that they were charged with knowledge of the condition of affairs, and chargeable with knowledge of the fact that it was remaining in that condition.

The question now, it seems to us, is whether this fence was a sufficient fence to turn stock, because that is a question that might perhaps be a test, but the question under the statute whether it was a sufficient fence or not, was a question that should have been left to the jury. It is one of those mixed questions of law and of fact that is the peculiar province, as the Supreme Court of this state say, for the jury to pass upon. It might be that that fence was amply sufficient to keep a child from passing through or straying upon the track of the railway company. Possibly it was not, but whether it was or was not, was not a question of law, but a question of fact, in our judgment, that should have been submitted to the jury.

This child, it appears, was a child about six years of age, or a little older, and the question whether the child was negligent, if he was old enough to be capable of a negligent act, if that was the claim that was made in the case, should have gone to the jury to be passed upon by the jury.

It is said that the law is that a child under six years of age is incapable of committing an act of negligence; it has not sufficient knowledge, but there are cases that do not take that view, that hold to the contrary. I do not find, or at least I have not seen any cases in Ohio, touching that point.

There was, in connection with this line of thought, evidence offered which was ruled out by the court, and that was that the children were in the habit of going there for the purpose of playing at the end of this street which adjoined this railroad track, and where this opening was. Now, in the view that we take of the case, that testimony was competent, and should have been admitted by the court for the purpose of throwing light upon the situation and throwing light upon the notice that the company would have of the situation and of liability of children to pass through upon the line of the railway company. It must be observed that leaving this opening in the line of the fence practically was an invitation to the children who were at play to go upon the track, or not to put it in that form, it was notice that children were liable to go upon the track, and no steps were taken to prevent that.

Now, it seems to us, that the omission to rebuild that fence and keep it in the condition in which it originally was, to keep it in the condition which the statute requires, was an act of negligence for which the company would be responsible if it was shown that it was through that defect that this child strayed upon the land of the railroad and the line of the track. It was urged that the condition of the fence would not be the proximate cause of the injury, that is to say, the opening in that fence was too remote, but we do not share that view of the case. At any rate we are of the opinion that that question should have been left to the jury to decide, whether it was or was not such an opening as would attract children or be apt to cause them to pass upon the track, and into places of danger.

The judgment of the court below will be reversed and the cause will be remanded to the court of common pleas for a new trial.